# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**Dennis O. Bardales and Estela Bardales,**<br><br>        **Debtors.** | **Bankruptcy Case No. 12-40598-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

Paul Ross, IDAHO BANKRUPTCY LAW, Paul, Idaho, Attorney for Plaintiff.

Heidi Buck-Morrison, RACINE OLSON, Pocatello, Idaho, Attorney for Chapter 7 Trustee.

### *Introduction*

In this chapter 7 case, the Court addresses an issue concerning the scope of property included in the bankruptcy estate.[1]  The chapter 7 trustee, Gary L. Rainsdon ("Trustee"), filed his final report on September 4, 2019.  Dkt. No. 49.  On September 12, 2019, the debtors, Dennis O. Bardales and Estela Bardales ("Debtors"), filed an objection

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION − 1

("Objection") to Trustee's final report claiming that $5,608.54 in funds the Trustee

received from a class-action settlement should not be considered property of the

bankruptcy estate and should not be distributed to creditors.  Dkt. No. 53.  Trustee

responded to the Objection on September 30, 2019.  Dkt. No. 58.  On October 11, 2019,

the parties agreed to a statement of undisputed facts, Dkt. No. 62, and Debtors filed an

additional brief.  Dkt. No. 63.  The Court conducted a hearing on the Debtors' Objection

on October 15, 2019, and thereafter took the matter under advisement.  Dkt. No. 65.  The

Court has considered the stipulated facts, briefs, and arguments of counsel, as well as the

applicable law, and this memorandum of decision constitutes the Court's findings,

conclusions, and explains the reasons for its disposition of the Objection.  Rule 7052.

### *Facts*

On July 23, 2010, Debtors obtained an automobile loan from Wells Fargo Auto

Finance to purchase a 2005 Ford F150 ("Loan").  Dkt. No. 62 at Ex. B-1.  Debtors filed a

chapter 7 petition on April 29, 2012.  Dkt. No. 1.  The Loan was identified in the

Debtors' Schedule F as a debt owed to "Wells Fargo/Wachovia."  Dkt. No. 62 at 2.  All

of the payments Debtors made towards the Loan were made prior to the petition date.

Dkt. No. 62 at 2.  Debtors were granted a discharge on August 10, 2012, and the case was

later closed on November 26, 2012.  Dkt Nos. 29, 35.

On March 25, 2019, Trustee received a letter dated March 22, 2019, entitled

"Notice of reimbursement related to Wells Fargo auto loan; 2005 Ford F150" from Wells

MEMORANDUM OF DECISION − 2

Fargo Auto Finance ("Reimbursement Notice").  Dkt. No. 62, Ex. A.  In relevant part, the

Reimbursement Notice explained that:

> We recently conducted a review of our Collateral Protection Insurance
> ("CPI") program.  CPI is a type of insurance that protects against loss or
> damage to a vehicle.  We determined that we applied CPI charges to the
> account.  The charges associated with the CPI policy(ies) may have
> adversely affected the account.

Dkt. No. 62 at Ex. A-5.  The Reimbursement Notice also indicated that a CPI policy

"may have been placed unnecessarily" on Debtors' account.  Dkt. No. 62 at Ex. A-5.

Shortly after receiving the Reimbursement Notice, Trustee and Debtors each

received a "Notice of Proposed Settlement of Class Action relating to *In re Wells Fargo*

*Collateral Protection Insurance Litigation*, Case No. 8:17-ML-2797-AG-KES"

("Settlement Notice").  Dkt. No. 62, Ex. B.  The Settlement Notice provides a detailed

description of the terms of the proposed settlement agreement ("Settlement Agreement")

reached regarding a class-action lawsuit filed on July 30, 2017, against Wells Fargo and

National General Insurance Company ("Defendants") by an aggrieved class of plaintiffs.

Dkt. No. 62, Ex. B.  In the lawsuit, the plaintiffs alleged that between October 15, 2005,

and September 30, 2016, Defendants unlawfully placed CPI policies on settlement class

members' accounts that were "duplicative, unnecessary, and overpriced."  Dkt. No. 62 at

Ex. B-3.  Per the lawsuit, the placement of these CPI policies caused settlement class

members "to suffer financial harm, including wrongful charges, fees, costs, and credit

damage."  Dkt. No. 62 at Ex. B-6.   The Settlement Notice also stated that Defendants

MEMORANDUM OF DECISION − 3

"deny each and all of the claims and allegations of wrongdoing" related to the subject matter of the lawsuit.  Dkt. No. 62 at Ex. B-3.

The Settlement Notice defines class members as "Wells Fargo Dealer Services Customers who had a CPI policy placed on their Account(s) that became effective at any time between October 15, 2005, and September 30, 2016 and Wells Fargo Auto Finance Customers who had a CPI policy placed on their Account(s) that became effective at any time between February 2, 2006, and September 1, 2011."  Dkt. No. 62 at Ex. B-4.  The Settlement Notice excludes certain accountholders that cancelled their CPI policies before suffering any alleged harm; such excluded accountholders are defined as "Non-Compensable Flat Cancels."  Dkt. No. 62 at Ex. B-7.  Continuing, the Settlement Notice explains that "payments are calculated based on the type of impact that CPI may have had on your account," but does not provide any specific accounting of the CPI calculation related to Debtors' Loan account.  Dkt. No. 62 at Ex. B-7.

The Settlement Notice also explains that class members may accept, reject, or object to the Settlement Agreement's terms.  If class members take no action to exclude themselves from the Settlement, then they are automatically bound by its terms and release all of their claims against Defendants.  Dkt. No. 62 at Ex. B-4.  In other words, class members were required to either (1) take affirmative action to exclude themselves from the Settlement Agreement, or (2) do nothing, and thus implicitly agree to release their claims against Defendants and be bound by the Settlement Agreement.  Dkt. No. 62 at Ex. B-10.

MEMORANDUM OF DECISION − 4

After receiving the Reimbursement Notice, Trustee moved to reopen Debtors' bankruptcy case, and the Court issued an order reopening the case on April 24, 2019. Dkt. No. 41.  There is no evidence that either Trustee or the Debtors took action to exclude themselves from the Settlement Agreement, and on June 27, 2019, the Trustee received a check for $5,608.54 from the Wells Fargo Automobile CPI payment program ("Settlement Payment").  Dkt. No. 62, Ex. C.

Trustee issued his final report in Debtors' case on September 4, 2019.  Dkt. No. 49.  That final report described the full amount of the Settlement Payment as property of the Debtors' bankruptcy estate to be distributed to unsecured creditors.  Dkt. No. 49.  As previously discussed, Debtors objected to Trustee's final report, arguing that the Settlement Payment should not be considered property of the bankruptcy estate and that Trustee should pay the funds to Debtors.  Dkt. No. 53.

### *Analysis and Disposition*

*A. Property of the Estate Under § 541*

The critical question in this case is whether the Settlement Payment received by the trustee post-petition is property of the bankruptcy estate under § 541.  "The party seeking to include property in the estate bears the burden of showing that the item is property of the estate." *Mackenzie v. Neidorf (In re Neidorf)*, 534 B.R. 369, 372 (9th Cir. BAP 2015).

Section 541(a)(1) of the Code provides that the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."

MEMORANDUM OF DECISION − 5

Congress intended that a broad range of property, including both tangible and intangible

interests, be included in the bankruptcy estate. *In re Porrett*, 547 B.R. 362, 366 (Bankr.

D. Idaho 2016) (citing *In re Pegrom*, 395 B.R. 692, 695 (Bankr. D. Idaho 2008)). Even

so, the scope of property included in the estate is not so broad as to expand a debtor's

property rights beyond what existed as of the date of filing. *Id.* (citing *Pegrom*, 395 B.R.

at 695).

> As this Court has previously explained:
>
> Despite the temporal limitation in § 541(a)(1), property of the estate also
> includes certain kinds of property coming into existence after bankruptcy.
> For example, the estate will also include "[p]roceeds, product, offspring,
> rents, or profits from property of the estate" and "any interest in property
> that the estate acquires after the commencement of the case." § 541(a)(6),
> (a)(7).

*Porrett*, 547 B.R. at 366. In this context, "proceeds" is not to be defined as narrowly as it

is in the Uniform Commercial Code, resulting in a definition that is exceedingly broad.

*Id.* (internal citations omitted).

"Congress enacted § 541(a)(7) to clarify its intention that § 541 be an all-

embracing definition and to ensure that property interests created with or by property of

the estate are themselves property of the estate." *Id.* at 365–66 (quoting *Neidorf*, 534

B.R. at 372). Post-petition property acquired by the estate is included in the estate under

§ 541(a)(7) "if it was created with or by property of the estate; acquired in the estate's

normal course of business; or is otherwise traceable to, or arises out of, any prepetition

interest in the bankruptcy estate." *Id.* at 366 (citing *Neidorf*, 534 B.R. at 372).

MEMORANDUM OF DECISION – 6

*B. The Parties' Arguments*

       1.  <u>Trustee's Argument</u>

Trustee argues that property of the estate includes Debtors' accrued legal causes of action as of the petition date regardless of whether Debtors were aware of such causes of action when they filed.  Dkt. No. 58 at 3.  Per the Trustee, the existence of a possible cause of action is enough to satisfy the definition of § 541(a)(1), and it does not matter that Debtors did not actually file a lawsuit prior to the petition date and did not include any possible cause of action in their bankruptcy schedules.  *Id.* at 3–4.  While Trustee acknowledges the Settlement Payment was received post-petition, he contends it was paid to Trustee on behalf of Defendants in exchange for their release of any possible cause of action accruing pre-petition based on the placement of CPI on Debtors' Loan account. *Id.* at 4.  Thus, according to the Trustee, the post-petition Settlement Payment is "proceeds" of the claim pursuant to § 541(a)(6) because it is traceable to Debtors' pre-petition cause of action, which is property of the estate itself.  *Id.*

In support of his position, Trustee relies heavily on the district court's decision affirming the bankruptcy court in *Porrett*. 564 B.R. 57 (D. Idaho 2016).  In *Porrett*, the debtors obtained a pre-petition home loan from Wells Fargo.  *Id.* at 61.  After the bankruptcy case closed, a Federal Reserve Board investigation revealed that Wells Fargo had improperly funneled certain borrowers into subprime loans with higher interest rates. *Id.*  The debtors were a part of the class of potentially affected borrowers.  *Id.*  Though Wells Fargo admitted no wrongdoing, after negotiations, Wells Fargo and the Federal

MEMORANDUM OF DECISION – 7

Reserve Board reached a settlement agreement under which Wells Fargo would pay a penalty and take remedial actions with respect to certain borrowers who may have been impacted by Wells Fargo's lending practices. *Id.* at 61–62. In order to obtain funds potentially due under the settlement agreement, affected borrowers were required to execute a release of their prepetition claims against Wells Fargo, and the debtors executed such a release. *Id.* at 62. Wells Fargo paid the funds due the debtors to the trustee to be held pending the bankruptcy court's ruling as to whether the funds constituted property of the estate under § 541. *Id.*

In *Porrett*, the debtors argued the payment was not property of the estate because they did not have an accrued cause of action when they filed their petition, and thus they had no legal interest that could properly be considered property of the estate under § 541(a)(1). *Id.* at 70. The bankruptcy court disagreed, and the district court affirmed, finding that the payment issued under the settlement agreement was property of the estate under § 541(a)(1) because the consent order was, in and of itself, evidence of fraud and wrongdoing by Wells Fargo. *Id.* Neither court was swayed by the argument that there was no accrued prepetition cause of action because Wells Fargo had not admitted wrongdoing or because the amount of damages based on any hypothetical prepetition claim had not been determined. *Id.*

Because the District Court in *Porrett* found that the debtors held a legal interest against Wells Fargo on the petition date under § 541(a)(1), and "because the Trustee was required to release potential claims against Wells Fargo for prepetition misconduct [in

MEMORANDUM OF DECISION − 8

order to] receive the payment, the payment was property of the estate pursuant to either

[§ 541(a)(6) or § 541(a)(7)]." *Id.* at 63. Under § 541(a)(6), the payment was considered

"traceable to" the prepetition cause of action because the debtors were required to

execute a release of their prepetition cause of action in order to receive the payment. *Id.*

at 71–72. Under § 541(a)(7), the payment was considered property of the estate because

it was (1) created by the prepetition cause of action, (2) acquired in the normal course of

the bankruptcy estate's business, and (3) otherwise traceable to or arose out of a

prepetition interest included in the bankruptcy estate. *Id.* at 72.

Applying the logic of *Porrett* to the facts in this case, Trustee contends the

Settlement Payment should similarly be considered property of the estate. Per Trustee,

"any cause of action the Debtors may have against Wells Fargo for its unlawful practices

relating to CPI arose pre-petition, in 2010, at the time the auto loan originated and the

unlawful CPI was assessed against the Debtors. The [Settlement Agreement], while

made post-petition, arises from the pre-petition conduct of Wells Fargo." Dkt. No. 58 at

4. In the Trustee's view, the Debtors in this case held an accrued legal cause of action

against Defendants as of the petition date that was property of the estate under

§ 541(a)(1), just like the debtors in *Porrett* did. Therefore, as in *Porrett*, Trustee argues

this Court should find that the post-petition Settlement Payment paid by Defendants was

"proceeds" of that pre-petition claim and property of the estate under § 541(a)(6). Dkt.

No. 58 at 4.

MEMORANDUM OF DECISION – 9

## 2.  Debtors' Argument

On the other hand, Debtors disagree with Trustee, contending the Settlement Payment "was neither created with or by property of the estate nor can it be said that the payment is traceable to or arose out of any prepetition interest included in the bankruptcy estate." Dkt. No. 63 at 2.  According to Debtors, the payment is not property of the bankruptcy estate because they became "entitled to payment only as a result of qualifying events occurring after their bankruptcy." *Id.*  The qualifying events occurring after the bankruptcy are the lawsuit and the resulting Settlement Agreement itself, which "created the rights and remedies for the specified class of borrowers." Dkt No. 63 at 2.  In other words, Debtors contend that even though most or all of the events related to the Loan occurred pre-petition, Debtors held no accrued legal causes of action against Defendants on the date of the petition, and thus, there was no right to the Settlement Payment until the Settlement Agreement arose post-petition.  Dkt. No. 63 at 2–3.  Thus, the Settlement Agreement and Settlement Payment are exclusively post-petition assets that are not property of the estate.

In support of their position, Debtors rely on *Neidorf*.  534 B.R. 369 (9th Cir. BAP 2015).  In *Neidorf*, a lender foreclosed on the debtor's residence after the debtor filed her bankruptcy petition.  *Id.* at 370.  Years after the foreclosure, but while her bankruptcy case was still open, the debtor received a post-petition payment pursuant to a national settlement between banking regulators and certain banks, including the lender.  *Id.*  The debtor had filed for bankruptcy in 2008 and the payment was issued to compensate

MEMORANDUM OF DECISION − 10

"borrowers" who were affected by actions the lender took during 2009 and 2010. *Id.* at 372. Since all of the conduct of the lender that gave rise to the payment occurred post-petition, the debtor argued that the post-petition settlement payment was not property of the estate. According to the debtor, this was because the payment was wholly unrelated to any pre-petition event. *Id.* The debtor prevailed, with the panel in *Neidorf* explaining that the payment was not property of the estate because the Trustee failed to show "how the estate obtained an interest in the Foreclosure Payment itself when the qualifying events giving rise to Debtor's legal rights to the payment all occurred postpetition and were held solely by the borrowers." *Id.* Debtors contend that the qualifying events giving rise to their right to the Settlement Payment in this case similarly arose post-petition, and therefore the Settlement Payment is not property of the estate.

*C. Is the Settlement Payment Property of the Estate?*

    1.  <u>Section 541(a)(1)</u>

The first issue is whether the Settlement Payment is considered property of the estate under § 541(a)(1). To begin, there is no question that the Settlement Payment itself came into existence post-petition such that it cannot directly be considered property of the estate under § 541(a)(1). Even so, the Court must also consider whether Debtors had a legal interest in property in the form of an accrued legal cause of action as of the petition date. To do so, the Court looks to state law. Debtors contend there is no evidence of wrongdoing under Idaho law by Defendants based on breach of contract or

MEMORANDUM OF DECISION – 11

fraud, and thus there was no pre-petition accrued legal cause of action that can be considered property of the estate.

The Court agrees with Debtors that the language of the Settlement Agreement does not indicate that Debtors held a cause of action against Defendants based on breach of contract or fraud.  The Settlement Agreement does not address any specific contractual provision that was breached, nor does it suggest that Defendants acted with the intent to deceive necessary to establish a claim of fraud under Idaho state law.

However, as was the case in *Porrett*, the Court finds that Debtors held a potential cause of action against Defendants under the Idaho Consumer Protection Act ("ICPA") as of the date of the petition.  While no party briefed the applicability of the ICPA, the possibility of its application was discussed at the final hearing on this matter, and this Court is free to consider the applicable law of the jurisdiction in determining the existence of a potential cause of action.  Here, Idaho Code § 48-608(1) provides for a cause of action for losses related to a "method, act or practice declared unlawful by this chapter."  Such a cause of action accrues when a person purchases services and suffers a loss as the result of a practice declared unlawful by the ICPA.  Idaho Code § 48-608(1).  In this case, the potential loss suffered by Debtors due to Defendants' CPI practices gave rise to a possible cause of action under Idaho Code § 48-603(17) which makes it unlawful to engage "in any act or practice which is otherwise misleading, false, or deceptive to the consumer."  Debtors' potential cause of action under the ICPA thus accrued when Debtors entered into the Loan agreement with Wells Fargo Auto Finance during the time

MEMORANDUM OF DECISION − 12

period in which Defendants engaged in the practice of improperly placing CPI on loan accounts.

Here, Debtors and Wells Fargo Auto Finance entered into the Loan agreement pre-petition, all payments on the Loan were made pre-petition, and the Ford F150 securing the Loan was repossessed pre-petition.[2]  As was the case in *Porrett*, the Reimbursement Notice and the Settlement Agreement themselves are evidence of Debtors' accrued cause of action under the ICPA.  The Reimbursement Notice indicates Wells Fargo Auto Finance "applied CPI charges to the account" that "may have adversely affected the account" and "may have been placed unnecessarily."  Dkt. No. 62, Ex. A.  This gives rise to an inference that Debtors may have had a legal cause of action under the ICPA because CPI charges may have unnecessarily been applied to their Loan account.  Further, the Settlement Agreement indicates that all settlement payments issued were "calculated based on the type of impact that CPI may have had on [affected borrowers'] accounts."  Dkt. No. 62 at Ex. B-7.  The Settlement Agreement resolved a lawsuit in which the plaintiffs alleged Defendants wrongfully placed CPI on accounts resulting in financial harm, wrongful charges, fees, costs, and credit damage.  Dk. No. 62 at Ex. B-6.  Thus, Debtors' potential cause of action under the ICPA accrued against Defendants prior to the

---

[2] Paragraph 5 of Debtors' Statement of Financial Affairs filed on April 29, 2012, states that the "2004 Ford F150, extended cab, est. 105,000 miles" was repossessed on "October 11."  Dkt. No. 1 at 38.

MEMORANDUM OF DECISION − 13

petition date when they entered into the Loan agreement and began to make payments that may have been affected by Defendants' CPI practices.

Next, a defendant's denial of wrongdoing is standard in settlement agreements, so the fact that Defendants do not acknowledge any wrongdoing does nothing to change the Court's determination that Debtors held a potential cause of action against Defendants as of the petition date. *See, e.g.*, *Porrett*, 564 B.R. at 70 ("Even though Wells Fargo has not admitted, and may even dispute, any wrongdoing, and no damages have yet been proved, a cause of action had accrued at the time that the debtors began paying the higher rate of interest on their loan."). For Defendants, the primary purpose of the Settlement Agreement was to resolve potential legal liabilities based on its possible wrongdoing during a fixed period of time. To achieve this end, Defendants agreed to compensate potentially affected borrowers in exchange for their execution of a release of borrowers' claims based on any wrongdoing related to Defendants' CPI practices. Naturally, the release recites that Defendants did not do anything wrong because releasing Defendants from liability for wrongdoing was a primary purpose of the Settlement Agreement.

Further, it does not matter that Debtors were not aware of the existence of their claim as of the petition date. *Porrett*, 564 B.R. at 71 ("[P]roperty of the bankruptcy estate includes potential causes of action that accrued pre-petition, even if the debtor is unaware of the claim."). Nor does it matter that Debtors did not file a lawsuit before they filed their bankruptcy petition. *Id.* (explaining that a lawsuit on the cause of action does not

MEMORANDUM OF DECISION − 14

need to be filed prior to the commencement of the case in order for the cause of action to be considered property of the bankruptcy estate).

Debtors' reliance on *Neidorf* is misplaced because, in *Neidorf*, the events giving rise to payment occurred post-petition, so there was not a sufficient relationship between the settlement funds and any pre-petition wrongdoing on the part of the defendants. Here, even though the Settlement Agreement was executed post-petition, as was the case in *Neidorf*, the events giving rise to the need to settle legal claims against Defendants, including the repossession, all took place pre-petition.  Thus, this case is more like *Porrett*.

In *Porrett*, the events giving rise to the need to settle legal claims between the debtors and the defendants took place pre-petition, just as is the case here.  And, like this case, the lending relationship between the debtors and the defendants in *Porrett* occurred pre-petition.  In *Porrett*, a settlement agreement was executed post-petition to compensate a potentially affected class of borrowers, and those borrowers were required to execute a release of claims against the defendants.  Here, Debtors and Trustee did not have an affirmative duty to execute a release in order to receive the Settlement Payment, but they were given proper notice of the Settlement Agreement by the Settlement Notice and were provided an ample opportunity to opt in or opt out of the Settlement Agreement according to their wishes.  Given that the end result here is the same to the extent that Debtors and Trustee released Debtors' legal claims against Defendants by virtue of their silence, in exchange for the Settlement Payment, the Court sees no reason why this

MEMORANDUM OF DECISION – 15

distinction should be treated differently than the debtors' active execution of a release in *Porrett*. Finally, just as was the case in *Porrett*, it does not matter that the Defendants in this case did not admit any wrongdoing in the language of the Settlement Agreement. As mentioned above, the Settlement Agreement itself is evidence of wrongdoing that establishes Debtors held an accrued cause of potential legal action under the ICPA at the time they filed their petition. As such, the Court finds that Trustee has met his burden of showing that Debtors' legal cause of action against Defendants was property of the bankruptcy estate under § 541(a)(1) when the petition was filed.

      2.   <u>Subsections 541 (a)(6) and (a)(7)</u>

Even though Debtors held a cause of action against Defendants on the petition date, the Court must still consider whether the Settlement Payment itself was "proceeds" of that cause of action under § 541(a)(6) or, alternatively under § 541(a)(7), whether the Settlement Payment was (1) created with or by property of the estate, (2) acquired in the estate's normal course of business, or (3) traceable to, or arose out of, any prepetition interest in the bankruptcy estate.

The Court again turns to the District Court of Idaho's decision in *Porrett* for guidance on this issue. In *Porrett*, the Court explained that "property of the bankruptcy estate includes payments received post-petition on a pre-petition claim, even though, as here, post-petition proceedings, actions, or settlement on the claim were required to receive the payment, because such post-petition payment is proceeds of the pre-petition claim." *Porrett*, 564 B.R. at 72. This reasoning applies with the same force in this case.

MEMORANDUM OF DECISION − 16

The Settlement Payment was paid post-petition based on a cause of action that accrued pre-petition. Thus, even though the Settlement Agreement was executed post-petition, the Settlement Payment was paid because of the Debtors' pre-petition claim, and the Court finds that the Settlement Payment is property of the estate under § 541(a)(6).

Further, as in *Porrett*, the Court finds that the Settlement Payment is also after-acquired property of the bankruptcy estate under § 541(a)(7) for three reasons. First, it was created by property of the estate to the extent it emanated from Debtors' pre-petition legal cause of action. Second, it was acquired in the normal course of the bankruptcy estate's business as Defendants notified Trustee of the Settlement Agreement with the Notice of Reimbursement and the Settlement Notice, and Trustee held the sole authority to settle a cause of action he considered to be property of the bankruptcy estate. Lastly, and somewhat redundantly, the payment was otherwise traceable to a pre-petition interest of the bankruptcy estate. Accordingly, the Court finds that the Settlement Payment was property of the bankruptcy estate under any of the three applicable bases found in § 541(a)(7).

### *Conclusion*

Debtors' Objection to Trustee's final report is overruled. The Court finds that Debtors held an accrued legal cause of action as of the petition date, and that cause of action was property of the bankruptcy estate under § 541(a)(1). The Settlement Payment is property of the estate under § 541(a)(6) because it was "proceeds" of Debtors' pre-petition cause of action. Alternatively, the Settlement Payment was property of the

MEMORANDUM OF DECISION − 17

bankruptcy estate under § 541(a)(7) because it was traceable to Debtors' pre-petition

cause of action, it was acquired in the estate's normal course of business, and, at a

minimum, it was otherwise traceable to Debtors' pre-petition cause of action. A separate

order will be entered.



DATED: November 27, 2019

_____

JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE